Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1146 | **DATE** | 8/2/2004 |
| **CASE TITLE** | Daniel Zaborac vs. Phillips & Cohen Assoc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated, Phillips and Cohen's motion for summary judgment is granted in part and denied in part, (14-1) while Zaborac's is correspondingly denied in part and granted in part. (13-1) This action is set for a status hearing at 8:45 a.m. August 9, 2004 to discuss the future course of this litigation.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 0 3 2004 | |
| | Notified counsel by telephone. | | date docketed | 23 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 2004 AUG -2 PM 3:36 | 8/2/2004 | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANIEL L. ZABORAC, )
)
    Plaintiff, )
)
v. ) No. 03 C 1146
)
PHILLIPS AND COHEN ASSOCIATES, )
LTD., )
)
    Defendant. )

MEMORANDUM OPINION AND ORDER

Daniel Zaborac ("Zaborac") has sued Phillips and Cohen Associates, Ltd. ("P&C") for the claimed violation of numerous sections of the Fair Debt Collection Practice Act ("Act," 15 U.S.C. §§1692-1692o).[1] Each party now seeks summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56 and has complied with this District Court's LR 56.1.[2] For the reasons stated hereafter, P&C's motion is granted in part and denied in part, while Zaborac's is correspondingly denied in part and granted in part.

---

[1] This opinion cites to Act provisions as "Section --," using the Title 15 numbering rather than the Act's internal numbering.

[2] LR 56.1 requires parties to submit evidentiary statements and responses to highlight which facts are disputed and which facts are agreed upon. This opinion uses "Z." for Zaborac and "P." for P&C to designate all of the litigants' documents. Their LR 56.1 statements are cited "St. ¶--," and their responses are cited "Resp. ¶--." Where either party's LR 56.1 statement is undisputed by the opponent, the opinion includes only a citation to the original statement. "Stip. ¶--" refers to the stipulation to which both parties agreed.

DOCKETED
AUG 0 3 2004

## Rule 56 Standards

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, (477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants, drawing all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine factual issue exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (id.). Thus summary judgment is ultimately warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

In the case of cross-motions Rule 56 principles dictate a dual perspective that may well result in the denial of both motions. But here each party's submissions point to a definitive outcome as to each issue, although the outcomes sometimes favor P&C and sometimes favor Zaborac.

## Facts

After Zaborac became indebted to his credit card provider, it sold Zaborac's debt to a third party that then assigned it to P&C for collection (P. St. ¶¶4, 6). P&C sent Zaborac a dunning

letter on November 15, 2000 that read in pertinent part (Z. St. ¶¶5-6):

    Client:                    eCAST SETTLEMENT CORP
    Original Creditor:      MBNA
                             ....
    Balance:                   $32745.06

    Dear Daniel Zaborac:

        Your account has been referred to our office for collection on behalf of our above referenced client. To resolve this matter and prevent any further collection activity, full payment must be made.

        You are hereby notified that the above balance does not include the most recent late charges assessed, any applicable over the limit fees, or you [sic] most recent late charges assessed, any applicable over the limit fees [sic], or you [sic] most recent daily charges. In order to obtain your most current balance information, please call 1-888-344-0900 or write to eCAST Settlement Corporation, PO box 7247-6934, Philadelphia, PA 19170-6934.

        IT IS NOT IN YOUR BEST INTEREST TO NEGLECT THIS ACCOUNT ANY FURTHER! IF YOU HAVE ANY QUESTIONS, IMMEDIATELY CONTACT OUR OFFICE AT THE ABOVE TELEPHONE NUMBER.
                                            Sincerely,
                                            Adam S. Cohen, Esq.
                                            Co-Chairman / CEO

After receiving that letter, Zaborac's attorney David Philipps ("Philipps")[3] faxed P&C a response on December 9, 2002 disputing the debt and requesting that P&C provide validation of the debt (Z. St. ¶7).

---

    [3] As chance would have it, Zaborac's lawyer bears a name similar to the first name in P&C's firm. But both because the names are spelled differently and because the "Phillips" in P&C played no part in this matter, the usage in the text should create no confusion.

3

On December 10 P&C placed an immediate hold on all collection efforts for Zaborac's debt until it was verified (Stip. ¶5). On that same day Philipps telephoned P&C (in response to P&C's voice message from the previous day) to advise that Zaborac was contemplating filing for bankruptcy (Stip. ¶6). During that conversation the P&C representative offered to settle the Zaborac debt for 70% of the amount due, and Philipps countered with an offer to settle at 20% of the amount due (id.). On December 13 P&C faxed Philipps a letter declaring its willingness to accept 20% of the amount due to settle the debt (Stip. ¶10). Three days later Philipps told P&C that his client would accept the offer and make the 20% settlement payment immediately--but only if the debt was "zeroed out" on his credit bureau reports (Stip. ¶11).

Negotiations apparently stalled, and on the following day (December 17) Philipps (again in response to a voice message from a P&C representative) called P&C to reiterate his position that Zaborac disputed the debt and wanted validation (Stip. ¶12). At that time Philipps also said that he believed P&C had violated Section 1692g(b) (id.). P&C then closed Zaborac's account and made no further attempts to collect on the debt (Stip. ¶13). This action ensued.

4

## Applicability or Inapplicability of Act Provisions

### Section 1692g(b)

Zaborac's Count I claims P&C violated Section 1692g(b) by engaging in settlement discussions with Philipps after Zaborac disputed the debt but before verification of the debt was provided to Zaborac. Section 1692g(b)(emphasis added) reads:

> If the <u>consumer</u> notifies the <u>debt collector</u>[4] in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the <u>consumer</u> requests the name and address of the original creditor, the <u>debt collector</u> shall cease collection of the debt, or any disputed portion thereof, until the <u>debt collector</u> obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the <u>consumer</u> by the <u>debt collector</u>.

Thus a consumer has the statutory right to dispute his or her debt. At that point a debt collector has two options: either (1) provide verification of the debt and then continue collection activities or (2) cease collection efforts entirely (Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997)).

At the heart of the matter, then, is whether the interchange between Philipps and P&C can be considered "collection of the debt" under Section 1692g(b). Because that statute does not

---

[4] It is undisputed that within the Act's definitions Zaborac is a consumer and P&C is a debt collector (P. Resp. ¶¶3-4).

5

explicitly define "collection of the debt," and because no other federal court has previously given content to that concept, this Court must start from scratch in fleshing out just what activities are included within the scope of that language.

Needless to say, the first step is to look to the plain meaning of Section 1692g(b). That meaning controls unless its "literal application...will produce a result demonstrably at odds with the intentions of its drafters" (Greenfield Mills, Inc. v. Macklin, 361 F.3d 934, 954 (7th Cir. 2004)). While the statute commands a debt collector to cease demanding payment from the consumer until a requested validation is obtained, its language is certainly not expansive enough to create a ban on all communications between a consumer's <u>lawyer</u> and a debt collector. If that had been Congress' goal, it could have used a locution such as "shall cease all communications," or it could have carried its prohibition beyond speaking solely of the consumer and the debt collector.

But the short answer is that Congress did neither of those things, nor did it choose to enact a more expansive prohibition in any other respect. Thus the explicit, and in this sense restricted, language of Section 1692g(b) is strong evidence that it precludes only debt collection efforts targeting a consumer, not all communications between the debt collector and the consumer's lawyer (once the lawyer has entered the picture).

Such a plain-meaning statutory reading comports fully with a key underlying purpose of Section 1692g(b): stopping debt collectors from attempting to collect either from the wrong consumer or from consumers who have already paid their debts (see S. Rep. 95-382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695). And that plain-meaning reading is also aligned with the Act's primary purpose: to protect consumers from abusive, deceptive and unfair debt collection practices at the hands of debt collectors (Section 1692a(e); Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1324 (7th Cir. 1997)).[5]

But such generalized aids to statutory construction pale beside the powerful support provided by other--and closely related--pieces of the statutory scheme itself (see Jenkins v. Heintz, 124 F.3d 824, 833 (7th Cir. 1997)). For one thing, Section 1692a sets out the definitions for the entire subchapter

---

[5] Reading "collection of the debt" to apply only to consumers, and not to all of their attorneys' communications with the debt collectors, is sound because a consumer's attorney is quite properly considered an intermediary between the debt collector and the consumer, and as such has his or her own responsibility for protecting the consumer (Kropelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir. 2002)). Indeed, Philipps himself is most likely already familiar with the principle that "the underlying rationale of the statute--protecting unsophisticated consumers--does not support a ban on communications with consumer's attorneys": it appears that he was counsel in an earlier case announcing that very proposition (Phillips v. N. Am. Capital Corp., No. 98 C 7538, 1999 WL 299872, at *3 (N.D. Ill. Apr. 30))--though counsel's name there is spelled "David Phillips," no such listing appears in Sullivan's Legal Directory.

7

of which Section 1692g(b) is a part. And subpart (3) of Section 1692a defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt."

Any expansion of that definition to encompass a consumer's lawyer would impermissibly flout the congressional definition. Indeed, that conclusion is further buttressed by the fact that Section 1692c, which sets out a number of prohibitions against communications with "consumers," found it necessary to provide an expanded definition of the terms <u>for that section only</u>--and subpart (d) of that section enlarged the "consumer" concept to "include[ ] the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator" (but not, it should be noted, the consumer's lawyer). Both provisions--Sections 1692g(b) and 1692c(d)--plainly call the principle embodied in the familiar maxim "expressio unius est exclusio alterius" into play.

Moreover, it is not at all overkill to point as well to another part of Section 1692c, its subpart (a)(2), which requires a debt collector to cease communications with a "consumer" (as just defined) if the debt collector knows the consumer has retained an attorney and knows or has the means to learn how to get in touch with that attorney. Not only does that provision logically contemplate communications with the attorney instead of the consumer--it expressly calls for such communication. It would be extraordinarily bizarre to accept Zaborac's contention

8

that Section 1692g(b) somehow bars what Section 1692c(a)(2) specifically directs.

In sum, Section 1692g(b) cannot be read to prohibit what P&C did in conformity with the mandate of Section 1692c(a)(2). After Zaborac's lawyer Philipps disputed his client's debt and requested verification, P&C placed a formal hold on its collection efforts, ceased <u>all</u> communication with him and communicated only with Philipps. Its ensuing efforts to negotiate a settlement did not become retrospectively tainted because no settlement was ultimately reached. P&C's Rule 56 motion is granted as to Count I, and Zaborac's motion is of course denied.

Section 1692g(a)(1)

Zaborac next asserts, in his Count II, that P&C violated Section 1692g(a)(1) by not stating the amount of his debt in its initial dunning letter. To comply with that provision "a dunning letter must state the amount of the debt sufficiently clearly that the recipient is unlikely to misunderstand it" (<u>Taylor v. Cavalry Inv. L.L.C.</u>, 365 F.3d 572, 574 (7th Cir. 2004)).

To that end a court considers whether the meaning of a dunning letter can be gleaned easily by an "unsophisticated consumer" who, while "uninformed, naive or trusting," still possesses an "objective element of reasonableness" and does not occupy "the very last rung on the sophistication ladder" (<u>Gammon</u>

9

v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994)). If it is obvious from the letter's language "that not even a significant fraction of the population would be misled by it," a court should reject a Section 1692g(a)(1) claim outright (Taylor, 365 F.3d at 574-75).

Here this Court does not write on a clean slate. In the course of our Court of Appeals' consideration of variations on the same theme, its opinion in Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C., 214 F.3d 872, 875-76 (7th Cir. 2000) invalidated a debt collector's letter substantively indistinguishable from the one that P&C sent to Zaborac here, stating:

> The statement does not comply with the Act (again we can find no case on the question). The unpaid principal balance is not the debt; it is only a part of the debt; the Act requires statement of the debt. The requirement is not satisfied by listing a phone number. It is notorious that trying to get through to an 800 number is often a vexing and protracted undertaking, and anyway, unless the call is recorded, to authorize debt collectors to comply orally would be an invitation to just the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to. It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

And that lesson was reinforced earlier this year by a like

invalidation in Chuway v. Nat'l Action Fin. Servs. Inc., 362 F.3d 944, 947 (7th Cir. 2004), which explained Miller in these terms:

> Both parties appeal to our decision in Miller, but it is not on point. The dunning letter in that case listed the "unpaid principal balance" of $178,844.65 but added that "this amount does not include accrued but unpaid interest, unpaid late charges, escrow advances or other charges....The amount to reinstate or pay off your loan changes daily. You may call our office for complete reinstatement and payoff figures." An 800 number was listed. We held that the letter violated the Act because it did not state the amount of the debt owed by the plaintiff, since the debt was not limited to the unpaid principal.

In sum, the sina qua non of a statute-compliant dunning letter is its inclusion of a specific amount that constitutes the consumer's present debt.[6] If that is lacking, it is irrelevant that the letter may also contain additional explanatory phrases or qualifications that inform the consumer as to what types of items are or may be omitted from the figure or figures stated in the letter, or that tell the consumer where and how the actual amount of the debt can be learned (see Miller, 214 F.3d at 875; Chuway, 362 F.3d at 947).

Like the letter in Miller, the one that Zaborac received stated a "Balance"--but that figure admittedly did not state the amount of the debt. Instead it referred to a number of items that were not included, and it followed that with a phone number

---

[6] That identical proposition is embodied in the safe-harbor collection letter prescribed by our Court of Appeals in Miller, 214 F.3d at 876.

11

or address that had to be reached "[i]n order to obtain your most current balance information." That mirrored almost verbatim the language held to be unacceptable in <u>Miller</u>. And because P&C's letter contained the same deficiencies that caused the <u>Miller</u> letter to be ruled a violation of Section 1692g(a)(1), Zaborac's Rule 56 motion is granted as to Count II, while P&C's corresponding motion is of course denied.

Section 1692e(3) and (9)

Finally, Zaborac asserts in Count III that P&C violated the Section 1692e(3) prohibition against any "false representation or implication that any individual is an attorney or that any communication is from an attorney" and the Section 1692e(9) prohibition against any written communication "which creates a false impression as to its source, authorization, or approval." Those contentions challenge P&C's conduct in two respects.

First, Zaborac contends that P&C's name--Phillips and Cohen Associates, Ltd.--runs afoul of Section 1692e because the word "associates" inherently conveys the appearance that P&C is a law firm. As with claims under Section 1692g(a), that contention must be evaluated under the "unsophisticated consumer" standard that ascribes a base level of worldly knowledge to consumers and shields debt collectors against liability for outlandish, bizarre or idiosyncratic interpretations (<u>Gammon</u>, 27 F.3d at 1257).

Under that standard Zaborac's counsel has taken a page (a

page of music) from the song that the British army band played en route to the surrender at Yorktown: "The World Turned Upside Down." It is obvious that any correlation between the use of "associates" in a name and the identification of that name as denoting a law firm requires a level of sophistication, rather than the converse. That facet of Zaborac's argument is just plain folderol (a conclusion also reached as to P&C in <u>Rumpler v. Phillips & Cohen Assocs., Ltd.</u>, 219 F.Supp.2d 251, 257 (E.D. N.Y. 2002)).

That obvious conclusion is further bolstered by P&C's documentation in P. Exs. E and F, through a variety of publicly available statistics, that the term "associates" is in no way limited to law firms but is used as well by a wide variety of businesses not engaged in the practice of law. If the hypothetical unsophisticated consumer were to venture out into the world for any period of time, he or she would quickly encounter a whole slew of businesses and professionals other than law firms that make use of "associates."

Zaborac's second argument is that the signature block on P&C's dunning letter also contravenes Section 1692e because P&C CEO/Chairman Adam Cohen ("Cohen") signed it "Adam S. Cohen, Esq." To be sure, the honorific "Esq." is (in our modern parlance at least) used almost exclusively to refer to attorneys--so much so that the term's original meaning has been altered to the extent

13

of its increasing adoption to follow the names of women lawyers too. But while Cohen's use of the term in addition to properly setting out his corporate officer status appears gratuitous (and it seems that P&C could avoid further litigation and save itself legal fees by omitting the suffix from Cohen's signature), Zaborac has not carried his evidentiary burden (even with the benefit of favorable inferences) that an unsophisticated consumer would find the usage here confusing.[7]

In that respect it is noteworthy that two widely separated District Courts have rejected identical claims against P&C (Rumpler, 219 F.Supp.2d at 257; Troy v. Phillips & Cohen Assocs., No. 02 C 7147 (N.D. Ill. Sept. 2, 2003)). With Zaborac's counsel being only too well aware of that,[8] he clearly should not have sought to cast his lot solely on Zaborac's own affidavit stating that he himself was confused (Z. Aff. ¶4). Our Court of Appeals has said more than once that because judges may perhaps not be able to enter the minds (figuratively, of course) of the theoretical unsophisticated debtor, plaintiffs' counsel could

---

[7] Because P&C is not actually a law firm, Zaborac cannot successfully appeal to cases holding that businesses that provide dual services as both law firms and debt collection agencies, and that send out dunning letters on stationary using words such as "attorney-at-law" or "counselor," violate Section 1692e (see, e.g., Nielsen v. Dickerson, 307 F.3d 623, 634-40 (7th Cir. 2002)).

[8] Philipps also represented plaintiff in the Troy case, which is now on appeal.

14

best look to presenting objective evidence (such as survey results) showing confusion, rather than simply relying on a plaintiff's own self-interested attestation that he or she was confused (see, e.g., Taylor, 265 F.3d at 575 and cases cited there). Zaborac has just not done that, and his statement as to his personal and subjective confusion does not suffice to sustain his claim (id. at 574).

As with Count I, then, P&C prevails as to Count III. It too is dismissed.

## Conclusion

For the reasons that have been stated in this opinion:

1. P&C's Rule 56 motion is granted as to Counts I and III (which are accordingly dismissed) and is denied as to Count II.

2. Zaborac's Rule 56 motion is granted as to Count II and denied as to Counts I and III.

This action is set for a status hearing at 8:45 a.m. August 9, 2004 to discuss the future course of this litigation.

Milton I. Shadur
Senior United States District Judge

Date: August 2, 2004